IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NUMBER 19-64-7 |
| | : | |
| BRIAN FIOCCA | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

The Presentence Investigation Report drafted by Senior United States Probation Officer Megan A. Maier sets Brian Fiocca's sentencing guideline range at zero months to six months, based on an offense level of 6 and a criminal history category of I. Since the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required. (§ 5B1.1, 5C1.1)

A consideration of the sentencing factors enumerated in 18 U.S.C. § 3553(a), Mr. Fiocca's compliance with all terms and conditions of pretrial release, his personal history and characteristics and his demonstrated efforts toward post offense rehabilitation all mitigate toward a non-custodial sentence. Accordingly, pursuant to *United States v. Booker*, 543 U.S. 220 (2005), its progeny, and 18 U.S.C. § 3553(a), the defense respectfully suggests that a period of probation between one and five years is the most appropriate sentence for Mr. Fiocca.

I.      PROCEDURAL HISTORY

On January 29, 2019, a federal grand jury in the Eastern District of Pennsylvania returned a 116-count Indictment against John Dougherty, Robert Henon, Brian Burrows, Michael McNeill, Marita Crawford, Niko Rodriguez, Brian Fiocca, and Anthony Massa. Brian Fiocca

was specifically charged in Counts 1, 8, 9, 10, 26, 31, 46, 47, 48, 60 and 65 of the Indictment. On December 21, 2022, Mr. Fiocca appeared before the Honorable Jeffrey L. Schmehl and pursuant to a written plea agreement, pled guilty to Counts 8, 9, 10, 26, and 31of the Indictment. At the time of sentencing the government will move to dismiss the remaining Counts charging Mr. Fiocca. In addition, Mr. Fiocca has agreed to pay at least $10,376 in restitution.

## II.     DEFENDANT'S PERSONAL HISTORY

Mr. Fiocca's personal history is thoroughly and accurately summarized in presentence report prepared by Senior United States Probation Officer Megan A. Maier. Brian Fiocca was born on April 26, 1991, in Philadelphia, Pennsylvania. He is one of four children born to the marital union of George Fiocca (deceased) and Maureen Fiocca. His older brother, George Fiocca, III; his younger brother, Gregory; and younger sister, Maureen, all live and work in Philadelphia. The defendant enjoys a strong relationship with all his siblings and is especially close with his sister. He and his siblings were raised in South Philadelphia, next door to his uncle, John Dougherty. The defendant and his siblings enjoyed a positive childhood and were financially stable. His father was a Local 98 electrician, and his mother worked for the Court of Common Pleas in Philadelphia. Though the family was generally close knit and very well known in the community, the defendant's home life was marked by his father's alcohol abuse and associated problems. While his mother was a hands-on and nurturing parent, his memories of his father are primarily of him either working or drinking. Tragically, his father died at the age of 46 from liver cancer and cirrhosis of the liver in 2009, when the defendant was just a teenager.

As described by his mother, the defendant never got over his father's death. Despite any previous tension in the relationship, when his father was ill, the defendant went with him to all his medical appointments. After his death, the defendant took on the responsibility of making

sure his siblings were ok. His mother describes him as her "dependable child" and "well rounded and family oriented" with a "good heart." After the tragic death of his father, the defendant's uncle became a consistent and supportive father figure.

The defendant began working for Local 98 immediately after graduating from Saint John Neumann and Maria Goretti Catholic High School. He held various administrative positions within the Union, and most recently until his resignation in 2022, he acted as driver for John Dougherty. Since leaving Local 98, the defendant held a few different part time jobs while seeking full time employment. Currently he is working as a roofer for Roffo Roofing and is looking forward to beginning an apprenticeship with the Operating Engineers Union soon in March 2024.

In 2019, Mr. Fiocca married Brynn Sweeney. Brynn is employed by the Philadelphia Court of Common Pleas. Together they have two children, Callie (7) and Owen (5). Both children are healthy and attend a charter school in Philadelphia. Mr. Fiocca is a proud and devoted father and is committed to raising his children in a healthy and supportive environment. The instant case has been difficult for all of Mr. Fiocca's family. Mr. Fiocca recognizes that his crime and ensuing challenges have taken a toll on his marriage and familial relationships. The loss of his job has put financial strain on the family and the notoriety associated with the instant case has been difficult. Nevertheless, the defendant knows his family loves and support him.

## III. APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

In the present case, the Court must consider all of the factors identified in 18 U.S.C. § 3553(a) to craft a sentence that is "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.  18 U.S.C. § 3553(a)(1).  Counsel submits that the factors weigh as follows in Mr. Fiocca's case:

3

      **A.**      **The Nature and Circumstances of the Offense and Mr. Fiocca's History and Characteristics**

The instant case is undeniably serious, and Mr. Fiocca is truly ashamed of his conduct. Local 98 has always been a part of his life as well as that of his closest friends and family. In many ways, Local 98 was part of his family and synonymous with home. While Mr. Fiocca took advantage of the familiarity, he is not a recidivist or hardened criminal whose offense was motivated by malice or apathy towards others. On the contrary, this prosecution and his separation from the union have begun a difficult and transformative process of introspection and maturity. In many ways he has begun a journey of self-reliance and independence. Since his release on bond, Mr. Fiocca has demonstrated clear post offense rehabilitation and a proven ability to comply with conditions of supervision.

Mr. Fiocca also shares a very close bond with his mother, siblings, and extended family. The entire family has been impacted by the defendant's conduct and though they are distraught and worried, they love him and are committed to supporting him. At 32 years old, Mr. Fiocca has minimal contact with the criminal justice system. This arrest and federal prosecution, as well as the potential of incarceration in federal prison have had a tremendous impact on Mr. Fiocca and his family. His actions have cost him much—his reputation, at times his self-respect, and, perhaps worst of all, the possibility that he could be separated from his wife and children because of his own conduct. Many of the relationships damaged here will take Mr. Fiocca years to rebuild; and there are some things he will never regain. Nevertheless, as evidenced by the 36 letters of support attached herein as "Attachment A", there are many who recognize Mr. Fiocca's true remorse, his generous nature, his true potential and his genuine efforts toward rehabilitation. Those that love him remain in his corner and will continue to support him as he navigates the

next chapter of his life.

### B. The Need for the Sentence Imposed to Promote Certain Statutory Objectives

*1. To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Fiocca is now faced with the possibility of spending time in a federal correctional facility. He certainly never set out to harm Local 98; on the contrary, the Local has been a part of his life since he was a young child. He does not seek to justify or minimize his actions, as he understands the harm that he caused to Local 98, its employees, his family, himself, and society. Mr. Fiocca sincerely appreciates the seriousness of this offense, particularly when he considers the potential consequences beyond his arrest.

*2. To afford adequate deterrence to criminal conduct.*

The serious, public, and permanent nature of a federal felony conviction, and the attendant consequences, provide an adequate general deterrent to other similarly situated individuals to the extent that general deterrence can be accomplished through the sentencing of individuals.[1] Mr. Fiocca's prosecution and conviction for this case in the serious venue of federal court and the sentence that he faces provides a more-than-adequate general deterrent to other, similarly situated individuals. Moreover, it is well-established that the *certainty* of punishment, not the *severity* of it, has the most significant general deterrent effect. *See, e.g.*, CESARE

---

[1] Notably, however, there is no empirical evidence to support the generally held belief that imposing higher sentences increasingly deters crime. Rather, the research on this issue demonstrates that increased sentences do not serve to reduce crime through deterrence. *See* U.S. Dep't of Justice, Office of Justice Programs, Nat'l Institute of Justice, *Five Things About Deterrence*, 1 (2016) ("The certainty of being caught is a vastly more powerful deterrent than the punishment"; "Sending an individual convicted of a crime to prison isn't a very effective way to deter crime"; "Increasing the severity of punishment does little to deter crime."). The Sentencing Commission even concedes that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended nor designed to predict recidivism." USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 15 (2004).

BECCARIA, ON CRIMES AND PUNISHMENTS AND OTHER WRITINGS 63 (Richard Bellamy, ed.; Richard Davis, trans., Cambridge University Press 1995) (1764); Frank H. Easterbrook, *Criminal Procedure as a Market System*, 12 LEGAL STUD. 289, 295 & n.7 (1983); Alfred Blumstein, *Prison*, *in* CRIME 387, 408-409 (Wilson & Petersilia, eds., 1995); Daniel S. Nagin & Greg Pogarsky, *Integrating Celerity, Impulsivity, and Extralegal Sanction Threats into a Model of General Deterrence: Theory and Evidence*, 39 CRIMINOLOGY 865 (2001); Brian Tonry, *The Functions of Sentencing and Sentencing Reform*, 58 STAN. L. REV. 37, 52-54 (2005); Raymond Paternoster, *How Much do we Really Know about Criminal Deterrence?*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) ("The safest conclusion from the literature thus far would be that the perception of certain legal and extralegal sanctions does seem to act as a modest deterrence factor, but that the perceived severity and celerity of punishment do not appear to be effective deterrents to crime, and we know virtually nothing about celerity.").

  3.  *To protect the public from further crimes of Mr. Fiocca.*

The instant offense marks Mr. Fiocca's only felony conviction and most serious contact with the criminal justice system. Through his impeccable compliance with the conditions of pretrial supervision - all of which he has abided by since their imposition nearly five years ago, Mr. Fiocca has already proven he is not at risk of committing further crimes. Moreover, his family—the people who know him best—have expressed that he is kind-hearted and gentle, and cares deeply for others.

  4.  *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Mr. Fiocca graduated from high school and, until recently, has always been employed full time. He has been seeking employment and, most recently, has been working as a roofer until he

can begin his apprenticeship with the Operating Engineers Union. Despite a history of periods of heavy alcohol consumption and gambling, he has never participated in treatment. He recognizes that counseling could be beneficial and looks forward to participating, most efficiently through the assistance of the United States Probation Department. He has not been diagnosed with any serious or chronic medical conditions and is prescribed medication only for high blood pressure.

### C. Kinds of Sentences Available

The range of sentences statutorily available to the Court are listed in Part D of the PSR.

### D. The Sentencing Range Established by the Sentencing Commission

The advisory guideline range is 0-6 months based on an offense level of 6 a criminal history category of I.

## IV. CONCLUSION

Based on the above stated reasons, the defense respectfully requests that this Court grant a slight variance and impose a non-custodial sentence.

Respectfully submitted,

*/s/ Elizabeth L. Toplin*
ELIZABETH L. TOPLIN
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

      I, Elizabeth L. Toplin, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of Defendant's Sentencing Memorandum, via Electronic Case Filing and/or electronic mail, upon Anthony Carissimi, Assistant United States Attorney, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106 and Megan A. Maier, Senior United States Probation Officer, 600 Arch Street, Philadelphia, Pennsylvania 19106.

                                                */s/ Elizabeth L. Toplin*
                                                ELIZABETH L. TOPLIN
                                                Assistant Federal Defender

Date:   February 26, 2024